**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD BESKO,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY JUVENILE JUSTICE COMMISSION,<br><br>    Defendant. | CIVIL ACTION NO. 12-3008 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

**I.  INTRODUCTION**

The plaintiff, Edward Besko, brings the action against his employer, the defendant, the State of New Jersey Juvenile Justice Commission ("the JJC").  (See dkt. entry no. 1, Compl. at 1.) Besko alleges that he applied for a position as an "Administrator, Employee Relations" in the JJC Office of Human Resources, and that his application was rejected because he is male.  (See id. at 3-6.) He thus raises two claims of unlawful discrimination against the JJC, one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the other under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD").[1]

---

[1] The Court has jurisdiction over the Title VII claim pursuant to 28 U.S.C. § 1331 and over the NJLAD claim pursuant to 28 U.S.C. § 1367.  (See, e.g., Compl. at 2.)

The JJC now moves for summary judgment in its favor and against Besko on both counts. (See dkt. entry no. 20, Notice of Mot.) It argues, among other things, that Besko cannot establish a prima facie case of discrimination under Title VII. (See dkt. entry no. 20-1, Br. in Supp. at 18-22.) Besko opposes the Motion. (See dkt. entry no. 22, Opp'n Br. at 12-23.)

The Court will resolve the Motion without oral argument. See L.Civ.R. 78.1(b). For the reasons that follow, the Court intends to: (1) grant the Motion insofar as it concerns the Title VII claim; (2) enter judgment in the JJC's favor and against Besko on the Title VII claim; (3) deny the Motion without prejudice insofar as it concerns the NJLAD claim; and (4) dismiss the remainder of the Complaint pursuant to 28 U.S.C. § 1367(c)(3).

**II. STANDARD OF REVIEW**

Summary judgment is proper if the moving party shows both that (1) there is no genuine dispute as to any material fact, and (2) it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Material facts are those that "could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citation omitted). The Court, when determining whether the parties have presented any genuinely disputed material facts, must view the evidence in the light most

favorable to the non-moving party and draw all fair and reasonable inferences in the non-moving party's favor. Scott v. Harris, 550 U.S. 372, 380 (2007); Iadimarco v. Runyon, 190 F.3d 151, 155 n.3 (3d Cir. 1999).

The non-moving party bears the burden of producing at least some evidence to support each element of the claims at issue. See Fed.R.Civ.P. 56(c)(1)(A). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Speculation, conjecture, and the inferences drawn therefrom will not defeat a motion for summary judgment. See Lamont, 637 F.3d at 182 ("[T]he party opposing summary judgment . . . must point to evidence -- whether direct or circumstantial -- that creates a genuine dispute of material fact, 'and may not rely simply on the assertion that a reasonable jury could discredit the opponent[s'] account.'" (citation omitted) (latter alteration in original)); Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

The Court will grant summary judgment in the moving party's favor and against the non-moving party if the non-moving party fails to point to evidence to support the claims at issue case when bearing the ultimate burden of proof. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). Put another

way, the moving party is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

**III. BACKGROUND**

**A. Besko's Work History**

Besko graduated from college in 1979 and began his career in county governance. (See dkt. entry no. 20-6, Citera Certification, Ex. B, Besko Dep. at 16:16-20 and 28:9-29:3.) Shortly thereafter, he began working for the New Jersey Division of Motor Vehicles ("DMV"). (See id. at 29:10-12.) Besko's work experience at the DMV is relevant here insofar as he served the DMV for several years in Employee Services and Labor Relations. (See id. at 36:24-38:5.) In that capacity, he addressed and resolved employee concerns, and dealt with labor relations grievances, hearings, and disciplinary issues. (See id. at 38:18-40:2 and 44:23-55:7.)

It appears that Besko left the DMV in either 1995 or 1996 to take a position in the New Jersey Office of the Attorney General ("NJOAG"), where he worked for approximately eight months. (See id. at 60:2-4, 60:21-61:3, and 64:12-15.) It further appears that Besko transferred from the NJOAG to the JJC in early 1997. (See id. at 65:2-3; dkt. entry no. 20-7, Citera Certification, Ex. C, Personnel Action Request at 1.)

Besko, since 1997, has been assigned to several different JJC offices and departments. Three of those assignments appear relevant to the Court's resolution of the Motion. First, between December of 2000 and May of 2002, Besko served the JJC Office of Employee Relations. (See dkt. entry no. 20-8, Citera Certification, Ex. I, 12-30-00 Notice of Permanent Reassignment; dkt. entry no. 20-8, Citera Certification, Ex. J, 5-4-02 Notice of Permanent Reassignment.) There, Besko settled and resolved disciplinary proceedings, played a minor role in grievance proceedings, and had some interaction with unions. (See Besko Dep. at 99:12-101:4 and 103:19-23.) He also played a part in supervising one employee, though his interactions with that employee were limited. (See id. at 101:24-102:23 and 103:4-6.)

Second, between August of 2002 and October of 2009, Besko served the JJC Office of Chaplaincy Services. (See dkt. entry no. 20-8, Citera Certification, Ex. K, 8-12-02 Notice of Permanent Reassignment; dkt. entry no. 20-8, Citera Certification, Ex. L, 10-17-09 Notice of Permanent Reassignment.)[2] In that role, Besko facilitated a youth mentoring program and ensured that JJC wards were afforded certain religious freedoms. (See Besko Dep. at

---

[2] Besko served the JJC Office of the Director of Operations from May of 2002 until he joined the JJC Office of Chaplaincy Services in August of 2002. (See 5-4-02 Notice of Permanent Reassignment; 8-12-02 Notice of Permanent Reassignment.) But that service appears irrelevant to the resolution of the Motion.

5

127:10-128:1 and 128:19-25.) He did not supervise any other employees. (See id. at 128:6-18.)

Third, beginning in October of 2009 and continuing through the commencement of this action, Besko served the JJC Classification Unit. (See 10-17-09 Notice of Permanent Reassignment.) In this role, Besko is responsible for "doing past policies and procedures," maintaining individual files and general filing systems, and entering and submitting monthly reports. (See id. at 129:1-3 and 132:4-133:3.) It appears that Besko's work for the JJC Classification Unit involves neither employee nor labor relations, and does not involve the supervision of other employees. (See id. at 132:4-133:3.)

### B. The JJC Promotional Opportunity

The JJC posted notice of a "Promotional Opportunity" ("the Job") on April 19, 2010 for an "Administrator, Employee Relations" in the JJC Office of Employee Relations. (See dkt. entry no. 20-7, Ex. M to Citera Certification, Notice of Promotional Opportunity.) That notice described the "minimum job requirements" as follows:

**Education:** Graduation from an accredited college with a Bachelor's degree.

**Experience:** Six (6) years of experience as a labor relations hearing officer or negotiator, three (3) of which shall have been in an administrative or supervisory capacity.

> Note: Applications who do not possess the required education may substitute additional experience on a year-for-year basis.
>
> Note: A Master's degree in Labor Relations, Public Policy, or Business Administration may be substituted for one (1) year of the non-administrative, non-supervisory experience.

(Id.)

Besko applied for the Job on May 10, 2010. (See, e.g., Citera Certification, Ex. T, Besko Cover Letter & Résumé.) Besko earlier voiced his belief that "he was the only qualified candidate that applied for the position." (Compl. at ¶ 15.) However, he has since testified that he did not know whether others applied for the Job, or whether other such applicants were qualified. (See Besko Dep. at 143:2-144:18.)

Twelve people, including Besko, actually applied for the Job. (See dkt. entry nos. 20-11 through 20-13, 4-19-10 Posting Results (including redacted cover letters, résumés, letters of reference, and notes from certain applicants' interviews).) Four applicants were selected for interviews: three males and one female, "L.E." (See dkt. entry no. 28-10, Citera Certification, Ex. S, Bell Dep. at 39:15-17, 43:23-44:2, 51:1-2, and 85:22-86:21.) Besko was not one of the three males selected for an interview. (See dkt. entry no. 20-8, Citera Certification, Ex. N, 6-6-10 Rejection Letter.)

7

JJC management, following a first round of interviews, recommended that the JJC award the Job to L.E. (See Bell Dep. at 50:14-16 and 51:18-19.) L.E. received a second interview, but was not awarded the Job. (See id. at 51:18-53:4.) In fact, the JJC did not award the Job to any candidate. (See, e.g., id. at 84:22-85:1.)

**C. The Revised JJC Promotional Opportunity**

The JJC posted a second notice of a "Promotional Opportunity" on June 16, 2010. This posting was identical to the 4-19-10 posting in all but one respect: it included an additional note, which provided: "Preferred candidates will possess a J.D. degree and Admission to Practice as an Attorney at Law in the State of New Jersey and have knowledge of labor law and experience in labor relations." (Dkt. entry no. 20-8, Citera Certification, Ex. O, 2d Notice of Promotional Opportunity.)

Besko did not respond to the 6-16-10 posting; that is, he did not at that time re-apply for the Job. (See Besko Dep. at 151:16-152:4.)[3] To date, the JJC has not awarded the Job to anyone who applied pursuant to the notices discussed above. (See id. at 153:21-25.) It appears, however, that a male attorney employed by

---

[3] The JJC posted a third notice of "Promotional Opportunity" on March 11, 2011. Besko re-applied for the Job pursuant to that notice and was again rejected. But those facts, as explained in greater detail below, are irrelevant to the Court's resolution of the Motion because they go beyond the allegations of the Complaint.

8

the NJOAG has assumed at least some of the responsibilities associated with the Job. (See dkt. entry no. 28-10, Citera Certification, Ex. S, Valentin Dep. at 93:2-5 and 101:4-104:16.)

### D. Procedural Posture

Besko brought the action against the JJC in 2012, alleging that the JJC discriminated against him by rejecting his 5-10-10 application for the Job. Besko alleges in the Complaint that the rejection of that application "constituted discrimination based upon sex." (Compl. at ¶ 25.)

The JJC, as noted above, now moves for summary judgment in its favor and against Besko, and argues, among other things, that Besko cannot establish a prima facie case of "reverse discrimination," i.e., a Title VII claim for gender discrimination against a male. (See Br. in Supp. at 18-22.) See also Pierce v. Pa. Dep't of Corrs., No. 03-173, 2006 WL 1479635, at *3 (W.D. Pa. Mar. 14, 2006) ("Gender discrimination against males is commonly referred to as reverse discrimination.") The brief filed by the JJC is cogent, well-organized, and on point.

Besko's opposition, by comparison, misses the mark. He cites an outdated legal standard for reverse discrimination claims and fails, when arguing that he can establish a prima facie case, to refer or cite to the evidence of record. (See, e.g., Opp'n Br. at 16 (incorrectly arguing, inter alia, that "the Third Circuit has yet to address" the issues implicated by the action).)

**IV. DISCUSSION**

**A. The Title VII Claim**

Reverse discrimination law is well-settled in this Circuit. See Maxwell v. Springer, 274 Fed.Appx. 186, 188 (3d Cir. 2008); Medcalf v. Trustees of Univ. of Pa., 71 Fed.Appx. 924, 927 (3d Cir. 2003); Iadimarco, 190 F.3d at 161, 163. "The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose." Maxwell, 274 Fed.Appx. at 188.

> To prove as much in the context of failure to hire or promote, a plaintiff ordinarily must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was rejected despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff to fill the position or treated more favorably those not in the protected class. The analysis is somewhat modified in the context of reverse discrimination, in that the plaintiff must present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others under similar circumstances, based upon a trait that is protected under Title VII.

Id.; see also Iadimarco, 190 F.3d at 161, 163; Pierce, 2006 WL 1479635, at *3 ("Under Iadimarco, the plaintiff must establish a prima facie case by presenting sufficient evidence to allow a fact finder to conclude that the defendant treated some people less favorably than others based on sex.").

Besko argues in the opposition brief that he can establish a prima facie case of discrimination. But in that section of his brief, he fails to analyze or cite evidence of record that might tend to show that the JJC treated him less favorably than other employees because of his gender. But see Maxwell, 274 Fed.Appx. at 188; Iadimarco, 190 F.3d at 161, 163; Pierce, 2006 WL 1479635, at *3. That failure is noteworthy, as courts in this Circuit have repeatedly cautioned parties opposing summary judgment to properly support their arguments. See DeShields v. Int'l Resort Props. Ltd., 463 Fed.Appx. 117, 120 (3d Cir. 2012) ("If factual support for [the plaintiff's] claim existed in the record, it was incumbent upon her to direct the District Court's attention to those facts."); Perkins v. City of Elizabeth, 412 Fed.Appx. 554, 555 (3d Cir. 2011) ("[A] court is not obligated to scour the record to find evidence that will support a party's claims. . . . Courts cannot become advocates for a party by doing for that party what the party ought to have done for him or herself."); see also Everett v. Dep't of Corrs., No. 10-3412, 2013 WL 2319359, at *2 (D.N.J. May 28, 2013); Karakozova v. Trustees of Univ. of Pa., No. 09-2564, 2011 WL 1754468, at *9 (E.D. Pa. May 9, 2011). It is insufficient to merely recite the facts underlying the action in a statement of facts or preliminary statement. Parties have an obligation to analyze those facts. Indeed, the United States Court of Appeals

for the Third Circuit has noted that "[j]udges are not like pigs, hunting for truffles buried in briefs." DeShields, 463 Fed.Appx. at 120 (citation omitted) (alteration in original).

The Court has nonetheless considered the evidence of record and now concludes that Besko cannot establish a prima facie case of reverse discrimination because he cannot demonstrate that the JJC treated Besko less favorably because of his gender. Although the JJC rejected Besko's application for the Job, it: (1) interviewed four applicants, three of whom were male; (2) elected not to award the Job to any applicant; and (3) ultimately assigned at least some of the responsibilities associated with the Job to a male attorney who works for the NJOAG. Under these circumstances, and based on these facts, it is appropriate to grant summary judgment in the JJC's favor and against Besko on the Title VII claim because no reasonable jury could find in his favor. See Celotex Corp., 477 U.S. at 325.[4]

**B.    The NJLAD Claim**

Where, as here, the Court has resolved all claims over which the Court has original jurisdiction, the Court has discretion to

---

[4] The Court's resolution of the Motion moots the JJC's other arguments that concern the Title VII claim. Accordingly, the Court will not discuss those arguments. See Solomon v. Soc'y of Auto. Eng'rs, 41 Fed.Appx. 585, 586 (3d Cir. 2002).

decline to exercise supplemental jurisdiction over the remaining claims. See 28 U.S.C. § 1367(c)(3).

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnotes omitted); see also Byrd v. Shannon, 715 F.3d 117, 128 (3d Cir. 2013). "Under Gibbs jurisprudence, where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Bor. of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). It does not appear that such considerations are controlling here.

## V. CONCLUSION

The Court will grant the Motion insofar as it concerns the Title VII claim. The Court will accordingly enter judgment on that claim in the JJC's favor and against Besko. The NJLAD claim will be dismissed without prejudice, and Besko may recommence that part

13

of the action in an appropriate state court pursuant to 28 U.S.C. § 1367(d). The Court will enter a separate order and judgment.

                                                 s/ Mary L. Cooper
                                                 **MARY L. COOPER**
                                                 United States District Judge

Dated: June 21, 2013